[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10940
Non-Argument Calendar
_____

Agency No. A206-445-911


LI CHAO SHI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 15, 2018)

Before TJOFLAT, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Li Chao Shi, a native and citizen of the People's Republic of China, seeks review of the final order of the Board of Immigration Appeals ("BIA") affirming the denial by the Immigration Judge ("IJ") of his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"). The BIA assumed Shi had suffered past persecution because of his participation in an underground Christian church, but concluded that the government had rebutted the presumption that he had a well-founded fear of future persecution by proving that it was both possible and reasonable for Shi to relocate within China to avoid persecution. On appeal, Shi argues that the government did not meet its burden of establishing that he could safely and reasonably relocate in China. After careful review, we grant Shi's petition and remand for further proceedings.

I.

Shi is a native and citizen of China. He was born in Changle City, Fujian Province, China and lived there until 2014. Shi testified that he began attending an underground Christian church at his uncle's house on December 1, 2013. On December 16, 2013, police officers raided a religious gathering at his uncle's house arrested Shi. The police said someone had reported that the group was participating in an "evil cult gathering." The officers confiscated their Bibles and cross, handcuffed them, and took them to the police station. At the station, officers interrogated and beat Shi. Officers punched his chest, stomach, and shoulders,

2

slapped his face, and kicked his back.  The officers told him to admit that he was part of a cult, and when he would not, they beat him again.  During one beating, the police hit him with batons.  Experiencing significant stomach pain, he asked the police for medicine, but the police told him "you better ask God to give you the medicine."  The officers told Shi they would not release him unless he signed a guarantee letter promising not to participate in the underground church again. Eventually, Shi signed the letter.  He was detained from December 16 to December 23.  Shi reported that he had bruises over his entire body from the beatings. However, he did not seek medical treatment because he didn't have money to see a doctor, and the hospital was too far away from his home.

After his release, Shi returned to the underground church.  On January 10, 2014, Shi went to a park with other members to hand out flyers on the Gospel of Matthew.  Police officers saw the members, confiscated their "antigovernment" flyers, and arrested Shi.  One of the officers said he recognized Shi from his previous arrest.  Again, the police interrogated and beat Shi.  This time, the police detained Shi for fifteen days.  Upon his release, the police made his wife sign another guarantee letter saying he would not participate in the underground church.

After his second detention, Shi stopped attending the underground church. Fearing for his safety, he left his home and went to stay with his father-in-law, forty kilometers away.  Shi decided to leave China and move to a country where he

3

could freely practice his religion.  He left China on February 21, 2014 and arrived in the United States on March 16, 2014.  Officers of the Department of Homeland Security ("DHS") detained Shi shortly after he arrived.  After conducting a credible fear interview, DHS released him.  Shi began attending church in New York and was baptized.

Shi filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), which the IJ denied.  The IJ did not make an adverse credibility finding, but found that Shi had not provided reasonably available corroborating evidence as required.  In the alternative, the IJ determined that, even assuming Shi had shown persecution, the government met its burden of showing that Shi could relocate elsewhere in China.  In particular, the IJ pointed to evidence submitted by the government that said "officials in many large urban areas, for example, increasingly allowed services in unregistered places of worship provided that they remain small in scale and did not disrupt social stability."

Shi appealed the IJ's decision to the BIA.  Shi argued that he provided reasonably available corroborative evidence, and that the IJ erred in determining the government met its burden to show that he could relocate within China.  In particular, Shi argued that the report relied on by the IJ said that the Chinese government by and large did not tolerate underground churches.  And even in

4

places where the government did tolerate them, they "are only tolerated when they are out of sight."

The BIA dismissed his appeal.  The BIA did not reach the IJ's holding that Shi had not presented reasonably available corroborative evidence.  Instead, the BIA based its decision on the IJ's alternative holding, "assuming the respondent established that he suffered past persecution on account of his religion, the DHS sufficiently established that he might relocate to another part of China and that it would be reasonable to expect the respondent to do so."  The BIA determined that Shi did not establish his eligibility for asylum because he "would be able to practice Christianity in parts of China, particularly in large urban areas, provided that the services are small in scale and do not otherwise disrupt social stability."[1]  This petition followed.

## II.

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion."  Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  In this case, the BIA adopted only one of the IJ's grounds for dismissing Shi's petition: assuming that Shi had established past persecution, the government had shown it was possible and reasonable for Shi to relocate elsewhere in China to

---

[1] Because the BIA determined that Shi did not show his eligibility for asylum, it also determined that he did not meet the higher standard for withholding of removal.  The BIA also determined that Shi had waived his claim for relief under CAT.

5

avoid future persecution.  Therefore, we review the dismissal of Shi's petition only on the basis of reasonable relocation.  See id.

We review the BIA's factual determinations under the substantial evidence test.  Id. at 1283.  Under this test, we affirm the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Id. at 1284 (quotation omitted).  This standard of review is highly deferential, and we will reverse the BIA's findings of fact "only when the record compels a reversal."  Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

The Attorney General has the authority to grant asylum to an alien who is a "refugee" under the INA.  8 U.S.C. § 1158(b)(1)(A).  For purposes of the INA, a "refugee" is someone who is outside the country of his nationality and is unable to return to that country because of persecution or a well-founded fear of persecution on the basis of a protected ground, including religion.  8 U.S.C. § 1101(a)(42)(A). The applicant for asylum bears the burden of proving that he is a refugee.  Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006).  To do so, he must present specific and credible evidence demonstrating that he (1) was persecuted in the past based on a protected ground, or (2) has a well-founded fear that he will be persecuted in the future based on a protected ground.  Id.

6

Once the applicant demonstrates past persecution, there is a presumption that he has a well-founded fear of future persecution.  Id.  The burden then shifts to the government to rebut that presumption, which it can do by showing by a preponderance of the evidence that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . , and under all the circumstances, it would be reasonable to expect the applicant to do so."  8 C.F.R. § 1208.13(b)(1)(i)–(ii).  In other words, the government must show that relocation is both possible and reasonable.  Arboleda v. U.S. Att'y Gen., 434 F.3d 1220, 1223 (11th Cir. 2006).  Factors to consider in the reasonableness determination include "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties."  8 C.F.R. § 1208.13(b)(3).

## III.

In this case, the BIA assumed Shi had established past persecution on the basis of his religion.  The BIA's decision denying Shi asylum therefore must be based on a determination that the government proved, by a preponderance of the evidence, that Shi's relocation elsewhere in China was both possible and reasonable.  See Arboleda, 434 F.3d at 1223–24.  The only evidence submitted by

the government to satisfy its burden was the 2014 Department of State's

International Religious Freedom Report.

The State Department report states:

In parts of the country, local authorities tacitly approved of or did not interfere with the activities of some unregistered groups. Officials in many large urban areas, for example, increasingly allowed services in unregistered places of worship provided they remain small in scale and did not disrupt 'social stability.' In other areas, local officials punished the same activities by restricting events and meetings, confiscating and destroying property, physically assaulting and injuring participants, or imprisoning leaders and worshippers.

The report also states that "authorities still regularly harassed and detained small

groups that met for religious purposes in homes and other locations." And even if

the government permits some Christian groups to worship in private, it "considers

several Christian groups to be 'evil cults'" and bans them by law.

Based only on this report, substantial evidence does not support a finding

that Shi could relocate within China to avoid persecution. Shi correctly points out

that the portions of the Report that the BIA relied on were contradicted by other

portions of the same document. But even the BIA's read of the evidence does not

support a conclusion that Shi could relocate within China without being

persecuted.

For example, the BIA determined Shi could relocate based on the Report's

finding that unregistered Christian organizations were tolerated in certain urban

areas in China so long as they "remain small in scale and did not disrupt so-called

8

social stability." The Report also noted that even in communities where the government tolerates house churches, like the one Shi attended, they were tolerated "as long as they gathered only in private." By the government's own evidence, Shi's relocation would be possible only so long as he keeps his religious practice out of sight. But Shi introduced evidence that part of his religious practice is proselytizing—he was arrested for distributing flyers on the Gospel of Matthew. And as this Court has said, "having to practice religion underground to avoid punishment is itself a form of persecution." Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1354 (11th Cir. 2009).

In addition, when Shi was detained, he was accused of being a member of an "evil cult gathering." By the government's own evidence, participation in Christian groups that are considered by the Chinese government to be evil cults is banned by law and punishable by imprisonment. Even assuming that some Christians would be able to continue practicing in other parts China, the record does not support a finding that Shi could practice his particular form of Christianity elsewhere in China. We also note that the government did not present any evidence suggesting exactly where it would be safe for Shi to practice, and what his religious practice would have to look like in order to avoid disrupting "social stability." The record compels reversal of the BIA's finding that the government

9

met its burden to show by a preponderance of the evidence that relocation would be possible for Shi.  See Arboleda, 434 F.3d at 1226.

In addition, even if the government could show that relocation within China was possible for Shi, substantial evidence does not support the government's finding that relocation would be reasonable under the circumstances.  See id. at 1223; 8 C.F.R. § 1208.13(b)(1)(ii).  While the BIA said that it had considered the relevant factors as to whether Shi's relocation would be reasonable, the BIA provided no information on what evidence it considered in reaching that conclusion.  The record does not reflect any evidence proffered by the government in support of a finding that specifically Shi's relocation was reasonable.  To the contrary, Shi presented ample evidence in the record that would support a finding that his relocation was unreasonable.

For example, the record shows that Shi has lived in the same province his entire life, and that his wife, son, and father still live in a rural village in the province.  Shi had also recently been fired from his job, and he testified that he could not go to the hospital after being beaten because it was too far away and his family did not have enough money.  Further, there is no indication in the record that he has family located farther than 40 kilometers away from his home.  The record is otherwise largely silent about Shi's ability to relocate within China, as the government never questioned him on this issue.  And the IJ did not raise the

10

internal relocation issue until after the testimony concluded, and then only expressly discussed the possibility—rather than the reasonableness—of relocation.

Because the BIA determined that Shi had shown past persecution on the basis of his religion, the burden was on the government to show that his relocation within China would be reasonable. Our review of the record reveals no showing by the government on this point. The record compels reversal of the BIA's finding that the government met its burden to show by a preponderance of the evidence that relocation would be reasonable for Shi. See Arboleda, 434 F.3d at 1226.

We therefore grant Shi's petition for review and remand to the agency for further proceedings.

**PETITION GRANTED.**